IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 25, 2010

## STATE OF TENNESSEE v. CURTIS LYNN HEARON

**Appeal from the Circuit Court for Blount County**
**No. C-17909      David R. Duggan, Judge**

**No. E2009-02352-CCA-R3-CD - Filed July 15, 2010**

The defendant, Curtis Glenn Hearon, appeals from the sentencing judgment of the Blount County Circuit Court.  Upon review of the record and the parties' briefs, we affirm the judgment but remand the case for further findings and rulings on the issue of pretrial jail credit.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Robert L. Huddleston, Maryville, Tennessee, for the appellant, Curtis Lynn Hearon.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Ellen Berez, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pleaded guilty to a charge of aggravated assault and presented a plea agreement to the court calling for a five-year Range I sentence with the manner of service to be determined by the trial court.

The victim, Renee Beauchemin, testified that, on July 31, 2008, she was drinking vodka with the defendant, her boyfriend.  The victim testified that the defendant became intoxicated and began arguing with her.  She testified that the defendant "says that I cussed him, is why he done it, that I called him a son of a bitch," and she added, "I don't recall if I did or not."  She testified, "[A]ll of a sudden, he came out with this knife that was already open.  And that's when he cut me."  She described the knife as a pocketknife with

a blade two to three inches long. She testified that the defendant "back-slashed [her] across [her] stomach." The victim introduced a picture of the wound, explaining that the cut was at least six inches long and one-half to one inch deep. The victim testified that, when the defendant saw that he had cut the victim, he said he was leaving because he did not want to go to jail.

The victim testified that she went to the hospital for treatment of the cut and received 18 staples to close the wound. She testified that the remaining scar from the wound will be permanent. She stated, "I was with him for almost a year and a half. I never expected him to do something like that to me. So, I have real bad trust issues." On cross-examination, she admitted that the defendant's behavior on July 31, 2008, was unusual for him.

The trial court determined that the defendant had a record of criminal convictions and that, accordingly, the sentencing enhancement factor set forth in Tennessee Code Annotated section 40-35-114(1) applied. *See* T.C.A. § 40-35-114(1) (2006). The court noted that, although the defendant's criminal record consisted of only misdemeanor convictions, two of those convictions were for assault. The court found the presence of no mitigating factors. The court expressed its view that the defendant had a "very serious problem with alcohol abuse." The court opined that the offense was serious – "a very serious cut and . . . the victim was apparently left to bleed." The court declined to find, however, that the offense was "particularly enormous, gross or heinous." The court expressed concern that, due to the defendant's alcohol abuse, he would likely re-offend if he were released into the community. The judge stated that a sentence of full probation would depreciate the seriousness of the conviction offense. Based upon its findings, the court ordered the defendant to serve his five-year sentence in confinement.

The defendant filed a timely notice of appeal. On appeal, he claims that the trial court (1) misapplied the sentencing enhancement factor for prior criminal conduct and (2) failed to properly apply pretrial jail credit to the defendant's sentence.

When considering a challenge to the manner of service of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d) (2006). Our case law has long held that the presumption of correctness "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Carter*, 254 S.W.3d 335, 345 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). The appealing party, in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Carter*, 254 S.W.3d at 344; *Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the

factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, the trial court, at the conclusion of the sentencing hearing, is obliged to determine the propriety of sentencing alternatives by considering:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id.* § 40-35-103(5).

Sentencing issues are to be determined by the facts and circumstances present in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

When examining a defendant's suitability for an alternative sentence, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C).

The defendant is required to establish his "suitability for full probation." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b). A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (Tenn. 1956)), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000). Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

In his first issue, the defendant does not claim that his prior criminal conduct is impertinent to the determination of the manner of service of his agreed-upon five-year sentence. *See* T.C.A. § 40-35-210(b) (stating that, in determining "the specific sentence and the appropriate combination of sentencing alternatives," the trial court shall consider, *inter alia*, "[e]vidence and information offered by the parties on the enhancement and mitigating factors"); *State v. Bolling*, 75 S.W.3d 418, 421 (Tenn. Crim. App. 2001) ("We disagree with the [S]tate's premise that the enhancement and mitigating factors are irrelevant when the sole issue before the court is the manner of service of a felony sentence."). Rather, the defendant posits that, in addition to considering his conviction record, the trial court impermissibly considered his record of arrests not culminating in convictions. He complains that the trial court utilized the arrest record not only in applying sentencing enhancement factor (1), *see* T.C.A. § 40-35-114(1), but also in concluding that the defendant was not amenable to rehabilitation and that measures less restrictive than confinement had been previously and

unsuccessfully applied to the defendant.

The presentence report listed approximately 23 prior charges filed against the defendant. All were misdemeanors. Of these charges, the report stated specifically that three resulted in convictions, two of them for assault. The report stated that eight of the charges were dismissed. Of the remaining charges, nine dispositions were stated as "not defined," but in these nine, the report stated that the defendant had received nine specified sentences. The other three cases involved two dispositions "not defined" that resulted merely in cash bond forfeitures and a criminal trespass charge the disposition of which was "unknown."

The trial court referred to only three convictions and referred to the other charges as "arrests" in describing the magnitude of the defendant's record of prior criminal convictions or behavior. *See* T.C.A. § 40-35-114(1) (empowering a court to enhance a sentence when "[t]he defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range"). We agree with the defendant that criminal behavior is not established merely through the admission of evidence showing prior arrests. *See, e.g., State v. Marvin D. Nance*, No. E2005-01623-CCA-R3-CD, slip op. at 13 (Tenn. Crim. App., Knoxville, Feb. 23. 2007). We discern, however, that among the "arrests" mentioned by the trial judge, nine resulted in specific sentences. We infer that, although the report listed these as having "not defined" dispositions, these nine charges necessarily resulted in convictions in addition to the three charges that specifically expressed named convictions. Some of these nine resulted in public intoxication or disorderly conduct convictions, but among the nine, the defendant was apparently also convicted of third-offense driving under the influence, resisting arrest (twice), and vandalism (twice). Additionally, the three convictions recognized as such by the trial court included two assaults, both of which resulted in suspended sentences.

In view of the foregoing, we conclude that enhancement factor (1) applied to the defendant, and we agree with the trial court that his prior convictions of assault should be of consequence in sentencing him on the aggravated assault conviction now at issue. Regardless of the application of the enhancement factor found in Code section 40-35-114(1), however, an order of confinement is supported by applicable portions of Code section 40-35-103. Through establishing at least 12 prior convictions imposed between 1995 and 2006, the State showed that confinement is necessary to "protect society by restraining a defendant who has a long history of criminal conduct," *see* T.C.A. § 40-35-103(1)(A), and the record further supported a conclusion that, based upon many previous grants of probation followed by re-offending, some of which occurred during a term of probation, "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant," *see id.* § 40-35-103(1)(C). Therefore, we hold that the record supports the denial of alternative sentencing in this case.

In his second issue, the defendant claims that he was not awarded the full amount of credit for his pretrial confinement in this case. He maintains that he should have received pretrial jail credit beginning on November 5, 2008, and running through the date of the entry of the conviction judgment, November 30, 2009. The judgment form in question awards pretrial jail credit from November 26, 2008, to October 26, 2009.

Tennessee Code Annotated section 40-23-101(c) provides:

> The trial court shall, at the time the sentence is imposed . . . render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held . . . pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served . . . subsequent to any conviction[.]

T.C.A. § 40-23-101(c). The awarding of such jail credit is mandatory. *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965).

Concerning the commencement date for the pretrial jail credit, the record on appeal reflects that the arrest warrant was issued through the general sessions court on July 31, 2008. According to the warrant form, "trial" was set for November 13, 2008, but it is unclear whether this date was filled in prior to or after arrest. A deputy sheriff signed the block for execution of the warrant and dated his signature November 26, 2008; however, this officer did not select the applicable execution activity – "executed as commanded," served on the defendant "already in custody," or "cannot be found" after a diligent search. A "record of initial appearance" in the general sessions court case was entered and stated that the defendant "first appeared" and was arraigned on November 5, 2008. The document reflected a bond amount of $10,000. Also, on November 5, 2008, the general sessions court entered an order requiring the defendant to submit a buccal swab specimen for purposes of "DNA" analysis before being released from custody. The general sessions court entered a bind-over order on March 12, 2009, and indicated that the defendant's bond amount was $10,000. The sentencing hearing was held on October 26, 2009, and the judgment, although not entered until November 30, 2009, recited that the "sentence imposed date" was October 26, 2009.

From the foregoing, the record is unclear whether the defendant was in custody prior to November 26, 2008, or if so, when. The record neither expressly states the date of the arrest nor informs us whether any bond was made at some point. The record does reveal, however, a basis for the defendant's questioning the proper beginning date for his pretrial jail credit, and we remand the case to the trial court for the purpose of conducting an appropriate

hearing to determine the actual accumulation of the defendant's pretrial jail credit prior to October 26, 2009.

Concerning the ending date for the pretrial jail credit, we believe that the judgment is self-executing to assure that the end of pretrial confinement will coincide with the beginning of the imposed sentence. The sentencing hearing was held on October 26, 2009, and the judgment awarded pretrial jail credit to that date. Although the judgment was not entered until November 30, 2009, it did express a "sentence imposed date" of October 26, 2009. We believe that, via the terms of the judgment itself, October 26, 2009, was the proper date for ending pretrial jail credit because it signifies the beginning of the calculation of his imposed five-year sentence, assuming he was in custody and remains confined pending appeal.

Consequently, we affirm the trial court's denial of alternative sentencing, but we remand the case to the trial court for further proceedings in determining the proper amount of pretrial jail credit.

_____
JAMES CURWOOD WITT, JR., JUDGE